**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

ENID SCHARL,

Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA PUBLIC UTILITY COMMISSION,

Defendant.

CIVIL ACTION NO. 1:24-CV-2021

(SAPORITO, J.)

**MEMORANDUM**

On November 20, 2024, the plaintiff, Enid Scharl, brought this action against the defendant Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission ("PUC"), for the plaintiff's alleged unlawful termination. (Doc. 1). The plaintiff asserted six employment-related claims: (1) gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 *et seq.*; (2) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the PHRA; and (3) retaliation under Title VII and the PHRA. (*Id.*). Two claims remain: (1) gender

discrimination in violation of Title VII and (2) retaliation in violation of Title VII.[1] The defendant now moves for summary judgment concerning the plaintiff's two remaining claims. (Doc. 24). The motion has been briefed by the parties (Doc. 25; Doc. 26; Doc. 31; Doc. 32) and the matter is ripe for review.

## I. Background[2]

From 2017 until 2023, the plaintiff was employed by the PUC as a public utility enforcement officer. The plaintiff was responsible, among other duties, for conduction inspections of motor vehicles to ensure compliance with applicable regulations. To perform these duties, the plaintiff was required to complete all applicable certification and training courses necessary to conduct the commercial vehicle inspections required as part of her job. Accordingly, the plaintiff was expected to obtain and maintain the certifications necessary to perform those inspections.

Pertinent to this action, the Operational Policy 4 of the North American Standard Inspection Program sets forth the requirements and

[1] On March 13, 2025, the court dismissed the plaintiff's ADEA and PHRA claims. (Doc. 19).

[2] The facts are taken from the defendant's statement of material facts (Doc. 25) and undisputed by the plaintiff. *See* (Doc. 30).

minimum number of inspections necessary to maintain inspector certifications. To maintain certification to conduct Cargo Tank inspections, which the plaintiff's position required her to perform, the Policy requires an inspector to complete at least eight qualifying inspections of vehicles during each calendar year. Public utility enforcement officers are ultimately responsible for completing the required number of inspections necessary to maintain their certifications. If an officer fails to maintain a required certification for a specific period, the officer must cease performing inspection activities that require that certification.

On January 23, 2023, the Pennsylvania State Police, responsible for monitoring inspector certifications, notified the PUC that the plaintiff had not completed the requisite number of inspections necessary to maintain her Cargo Tank certification. Although the plaintiff had completed eight general inspections, the Pennsylvania State Police determined that only five of those inspections qualified toward the annual requirement for her Cargo Tank certification because only five satisfied the applicable requirements. The PUC subsequently contacted the plaintiff to discuss the number of inspections that qualified toward

her certification requirement. In response, the plaintiff provided the PUC with copies of nine inspection reports. After reviewing and discussing those reports, the PUC and the plaintiff agreed that only six of the nine inspections qualified toward the Cargo Tank certification requirement. Thus, the plaintiff had not completed the minimum eight qualifying inspections required to maintain her Cargo Tank certification. Because the plaintiff failed to complete the required number of qualifying inspections necessary to maintain her Cargo Tank certification, she lost that certification, which was again required for her to perform an essential function of her position. Accordingly, the plaintiff could not perform the required Cargo Tank inspections unless and until she regained that necessary certification. Therefore, in accordance with its policies and procedures, the PUC issued the plaintiff a written reprimand for unsatisfactory work performance for failing to maintain the necessary certifications for her position.

Nonetheless, Operation Policy 4 provides a process by which an officer may regain a lapsed certification by successfully completing a “challenge test.” The test is an open-book examination designed to allow officers to demonstrate their proficiency after allowing a certification to

lapse. The required passing score is 80 percent. On February 28, 2023, the plaintiff took the challenge test but failed to achieve the required passing score, receiving a score of 65 percent. As a result, the PUC issued the plaintiff a one-day suspension and a letter informing her that, because she failed the challenge test, she was ineligible to begin the recertification process required for her Cargo Tank certification.

Although an inspector may take a challenge test to regain a lapsed certification, an inspector who fails the challenge test must complete a week-long inspection course before being permitted to retake the written certification examination. Because the plaintiff failed the challenge test, she completed a week-long training course in Atlanta, Georgia, from April 10, 2023, through April 14, 2023. Following completion of the training course, the plaintiff retook the certification exam but again did not receive a passing score, receiving a score of 68 percent. The PUC subsequently issued the plaintiff a second written reprimand for failing to pass the certification examination. As a result, the plaintiff remained ineligible to begin the recertification process and could not perform Cargo Tank inspections.

On May 8, 2023, the plaintiff attended another week-long training

course as required to regain her certification. On May 12, 2023, following completion of the course, the plaintiff took the written certification examination for the third time but again did not achieve a passing score, receiving a score of 75 percent. Accordingly, the plaintiff was terminated from her position for failing to obtain the certification required for her position and, consequently, being unable to perform the inspections required as part of her duties. Following her termination, the plaintiff filed a grievance challenging the termination. After reviewing the grievance, the PUC ultimately upheld the plaintiff's termination.

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure dictates summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the

non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

Parties seeking summary judgment bear "the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. A court must first determine if the moving party has made *prima facie* showing that it is entitled to summary judgment when evaluating such a motion. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the

purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III. Discussion

As noted above, the plaintiff brings two remaining claims against the defendant under Title VII: gender discrimination and retaliation. Title VII prohibits discrimination and retaliation by an employer against an individual on the basis of that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Our analysis of Title VII claims is governed by the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). "[F]irst we ask

whether the plaintiff has stated a prima facie case of discrimination or retaliation; if she has, we ask whether the employer has advanced a legitimate reason for its conduct; and finally we give the plaintiff an opportunity to prove that the employer's proffered reason is pretextual." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 325–26 (3d Cir. 2015). However, we need not undergo the full *McDonnell Douglas* analysis for the plaintiff's claims. Upon review of the record, we find that both claims fail to state a *prima facie* case and thus, summary judgment is warranted.

To establish a *prima facie* claim of discrimination under Title VII, a plaintiff must demonstrate that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position she held; (3) [s]he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination." *Johnson v. Keebler-Sunshine Biscuits, Inc.,* 214 F. App'x 239, 241 (3d Cir. 2007). While it is undisputed that the plaintiff was a member of a protected class and suffered an adverse employment action through her termination, the record affirmatively shows that the plaintiff was unqualified for her position at the time of her termination.

It is undisputed that the plaintiff's position as a public utility enforcement officer required her to complete a minimum number of inspections per year and hold specific certifications, specifically the Cargo Tank certification. Moreover, it is undisputed that the plaintiff failed to complete those requirements in 2022, and subsequently failed to become recertified as required by her position throughout the following year. Indeed, although the plaintiff was given three separate opportunities to obtain her certification by passing the written examination, she failed to pass the examination on each occasion. Therefore, the plaintiff was not qualified for her position as required under the second element of the *McDonnell Douglas* test. *See Sosa v. Napolitano*, 318 F. App'x 68, 72–74 (3d Cir. 2009) (finding the plaintiff was not qualified where she failed a training course that was an absolute minimum requirement for her position); *Cooper v. Thomas Jefferson Univ. Hosp.*, 743 F. App'x 499, 502 (3d Cir. 2018) ("A plaintiff is not qualified for a position, as required by the second prong—and her *prima facie* case fails—if there is objective evidence she did not possess minimal job qualifications such as 'a license or a similar prerequisite.'"); *Dowdell v. Community College of Phila.*, 725 F. App'x 198, 201 (3d Cir. 2018). Accordingly, the plaintiff has failed to

establish her discrimination claim under the first step of *McDonell Douglas*. Summary judgment as to this claim will therefore be granted.

To establish a *prima facie* claim of retaliation under Title VII, a plaintiff must demonstrate that: "(1) she engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340–341 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). Here, upon review of the record, we find that the plaintiff has failed to demonstrate her engagement in a protected activity for purposes of her retaliation claim under Title VII.

"With respect to protected activity, the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the participation clause) and those who oppose discrimination made unlawful by Title VII (the opposition clause." *James v. Tri-Way Metalworkers, Inc.*, 189 F. Supp. 3d 422, 442 (M.D. Pa. 2016) (quoting *Moore*, 461 F.3d at 341) (internal citations and quotations marks omitted). "Opposition to discrimination can take the form of informal

protests of discriminatory employment practices, including making complaints to management." *Id.* (quoting *Moore*, 461 F.3d at 341). "To determine if retaliation plaintiffs sufficiently opposed discrimination, we look to the message being conveyed rather than the means of conveyance." *Id.* (quoting *Moore*, 461 F.3d at 341) (internal citation and quotation marks omitted). However, a general complaint of unfair treatment is not protected conduct under Title VII. *See Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701 (3d Cir. 1995). The complaint must "explicitly or implicitly allege" that unfair treatment stemmed from the plaintiff's membership of a protected class. *Id.*; *see also Slagle v. Cnty. of Clarion*, 435 F.3d 262, 265–68 (3d Cir. 2006) ("The defect with [the] retaliation claim was that he never explicitly claimed that he was discriminated against on the basis of [his protected class]."). "[C]ase law has established that opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context." *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).

Here, the plaintiff identifies a single instance that she contends constitutes protected activity. (Doc. 31, at 17). Specifically, the plaintiff

relies on testimony from an employee of the PUC, who testified that the plaintiff communicated to her supervisor that "I think I'm being discriminated against 'cause I'm not getting out there and doing the bus inspections." (Doc. 25-1, at 361). But this isolated complaint does not rise to the level of protected activity for purposes of the plaintiff's retaliation claim under Title VII. As the Third Circuit has reiterated, an opposition to an unlawful employment practice must allege that "a *protected characteristic* was the basis for the adverse employment action." *Curay-Cramer*, 450 F.3d at 135 (emphasis added); *Slagle*, 435 F.3d at 266 ("[The Third Circuit] affirmed the dismissal of a retaliation claim because … [it] did not specifically complain about age discrimination and therefore did not constitute the requisite protected conduct for a *prima facie* case of retaliation.") (internal citations and quotations omitted). The plaintiff's general complaint, however, fails to invoke discrimination or unfair treatment based on sex or any other protected characteristic; it is wholly unrelated to sex. Instead, it turns on alleged retaliation for "not getting out there and doing the bus inspections." (Doc. 25-1, at 361). Again, the Third Circuit has held that "general complaints of unfair treatment are insufficient to qualify as protected activity under Title VII." *Locke v.*

*Jefferson Hills Manor*, 460 F. Supp. 3d 613, 620 (W.D. Pa. 2020) (citing *Daniels v. School Dist. of Phila.*, 776 F.3d 181, 195 (3d Cir. 2015)); *see also Mikell v. Marriot Int'l, Inc.*, 789 F. Supp. 2d 607, 618 (E.D. Pa. 2011) ("Complaints must be specific enough to notify management of the particular type of discrimination at issue in order to constitute 'protected activity.'"). Accordingly, the plaintiff has failed to establish her retaliation claim under the first step of *McDonell Douglas*. Summary judgment as to this claim will therefore be granted.

## IV. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment will be granted.

An appropriate order follows.

Dated: September 30, 2026

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States District Judge